```
                UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                        WESTERN DIVISION
```

DR. DAISY M. LACOUR                                          PLAINTIFF

VERSUS                                    CIVIL NO: 5:08cv315-DCB-JMR

CLAIBORNE COUNTY SCHOOL DISTRICT AND
DR. ANNIE KILCREASE, SUPERINTENDENT                         DEFENDANTS

## OPINION AND ORDER

This matter comes before the Court on defendants' Combined Motion for Summary Judgment [**docket entry no. 49**] and Supplement [**docket entry no. 61**] and plaintiff's Cross-Motion for Summary Judgment [**docket entry no. 57**]. Having carefully considered said Motions, Responses thereto, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. Facts and Procedural History

Dr. Daisy Lacour (hereinafter "plaintiff" or "Dr. Lacour") commenced this action with a pro-se Complaint filed against Dr. Annie Kilcrease and the Claiborne County School District (hereinafter collectively "defendants") on November 24, 2008.[1] Therein, Dr. Lacour alleges that the defendants sexually discriminated against her in violation of Title VII of the Civil Rights Act of 1964. Specifically, she alleges that she was

---

[1] Dr. Lacour and Dr. Kilcrease are both females and were both employed by the Claiborne County School District during the events that gave rise to this law suit.

1

terminated from her position as principal of Port Gibson High School on April 5, 2007, because of her gender, female.

Dr. Lacour was hired as principal of Port Gibson High School for the 2006-2007 academic year. Following a sequence of events throughout the year in which the defendants allege that Dr. Lacour failed to adequately perform her responsibilities as principal, Dr. Lacour was terminated. The defendants allege that during her tenure as principal, gang violence, fighting, and drug use escalated to a point that the safety of students and teachers was a major issue.

On July 24, 2007, the plaintiff filed charges with the U.S. Equal Employment Opportunity Commission ("EEOC"). Following an investigation, the EEOC issued a determination on September 24, 2008, that Dr. Lacour had met all requirements to support a claim of gender discrimination. After conciliation efforts failed through the EEOC, the Department of Justice issued a Notice of Right to Sue to Dr. Lacour on October 27, 2008. Thereafter, she filed her pro-se Complaint against the defendants on November 24, 2008.

On January 20, 2009, Dr. Lacour retained the Honorable Louis Watson to represent her, and, through counsel, she filed an Amended Complaint on January 23, 2009. Therein, she maintains her sexual discrimination claim and adds two additional state law claims: intentional infliction of emotional distress and tortious

2

interference with business and/or contractual relations.

On March 31, 2009, the parties entered an Agreed Order of Dismissal as to the plaintiff's intentional infliction of emotional distress claim. Subsequently, Louis Watson and Dr. Lacour both filed separate motions which essentially asked the Court to re-establish Dr. Lacour as a pro-se plaintiff. Magistrate Judge Roper granted both motions by text order on July 9, 2009, thereby allowing Louis Watson to withdraw and reestablishing the plaintiff as pro-se.

On June 12, 2009, before Mr. Watson was released from the case, the plaintiff filed a Motion to Dismiss the Agreed Order of Partial Dismissal as to the intentional infliction of emotional distress claim. According to Dr. Lacour, her attorney agreed to the partial dismissal without her consent and, therefore, it should be vacated. The Court denied this motion on July 29, 2009, holding that even if she did not consent to the partial dismissal, the statute of limitations had run on that claim and it was time-barred.

On August 13, 2009, the defendants filed a Motion for Summary Judgment. First, the defendants contend that Dr. Lacour cannot make a out a *prima facie* case for gender discrimination because she was not qualified for the position she held. Alternatively, the defendants argue that if the plaintiff succeeds in presenting a *prima facie* case, her termination was justified by legitimate,

nondiscriminatory reasons. In her Response, the plaintiff does not specifically address these arguments. Rather, Dr. Lacour asserts factual allegations in support of her claim that she was terminated based upon her gender and she relies upon the EEOC determination as evidence.

On August 20, 2009, the plaintiff filed a Cross-Motion for Summary Judgment. In her motion, she asserts a breach of contract claim and re-alleges conclusory facts supporting her initial claims, specifically relying on the EEOC determination as evidence of the defendants' sexual discrimination. Dr. Lacour also asserts that the defendants violated Federal Rules of Civil Procedure 26, 34, and 37. She claims that the defendants did not provide answers to her discovery requests in violation of the Magistrate Judge's discovery order.

In their Response to plaintiff's Cross-Motion, the defendants' argue that Dr. Lacour's breach of contract claim is without merit because she never asserted this claim in her Complaint or Amended Complaint. Additionally, the defendants' argue that it is the plaintiff's burden to sufficiently state facts in support of her claim, which she has failed to prove, and, in the alternative, the defendants have provided sufficient evidence that her termination was for legitimate, nondiscriminatory reasons. Both of these Motions are now before the Court.

**II. Summary Judgment Standard**

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

---

[2] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).

5

Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. The non-movant must instead come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. Analysis

#### *A. Defendants' Combined Motion for Summary Judgment*

1. Title VII Gender Discrimination Claim

Title VII proscribes an employer from discharging or otherwise discriminating against an individual based upon that person's race, color, sex, religion, or national origin. 42 U.S.C. § 2000e-2(a)(1)(2006). To make a *prima facie* case for gender discrimination the plaintiff must prove by a preponderance of the evidence that: "(1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she was terminated; and (4) after her termination, the employer hired a person not of the plaintiff's protected class." Burnett v. Thompson, 31 Fed. Appx. 839, 2002 WL 261526, *2 (5th Cir. 2002)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973)). If the plaintiff is able to establish a *prima facie* case, the

6

burden of persuasion then shifts to the defendant employer "to articulate some legitimate, nondiscriminatory reason for the employee's" termination. <u>Grimes v. Texas Dept. of Mental Health and Mental Retardation</u>, 102 F.3d 137, 140 (5th Cir. 1996)(citing <u>McDonnell Douglas</u>, 411 U.S. at 801-03). Lastly, if "the defendant is able to carry this burden, the presumption of discrimination dissipates and "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." <u>Texas Dept. of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

A plaintiff may prove discriminatory intent with direct or circumstantial evidence. <u>Wheeler v. BL Dev. Corp.</u>, 415 F.3d 399, 405 (5th Cir. 2005). "A plaintiff may establish circumstantial evidence of intentional discrimination by demonstrating that a defendant's articulated nondiscriminatory reason was pretextual." <u>Grimes</u>, 102 F.3d at 140.

In the case at bar, the plaintiff has made out a *prima facie* case. The defendants do not dispute that Dr. Lacour is a member of a protected class, that she was terminated, or that she was replaced by a male. Rather, the defendants contend that Dr. Lacour was not qualified for the position she held. As evidence, the defendants only argue that she had no experience with high school students. Yet, the plaintiff's resume clearly reflects that she

7

possessed a bachelor's degree in sociology; a master's degree in guidance and counseling; a doctor of education degree in early childhood education; elementary and administrative certifications; and professional experience as an associate professor at the collegiate level and as a director of student programs at Hinds Community College, Tougaloo College, and Jackson State University. For these reasons, the Court finds that a *prima facie* case of gender discrimination does exist.

The defendants offer legitimate, nondiscriminatory reasons for Dr. Lacour's termination. Dr. Lacour's termination letter states that she was released pursuant to Miss. Code Ann. § 37-9-59, because her continued presence on school premises interferes with and/or causes a disruption to the normal school operations and a threat to the safety or general welfare of the students. Specifically, the defendants allege that gang violence and drug use escalated during Dr. Lacour's tenure; that she exacted inequitable and unfair punishment towards students often overriding the recommendations of her administrative assistant who was in charge of discipline; that high school test scores dropped including a drop in the schools standing from a level 4 school to a level 2 school; that she scheduled school dances during scheduled times for tutoring students for area testing; and, that she allowed two students to leave campus without properly signing out and they were subsequently arrested the same day for fighting at a local

convenience store. As evidence of these reasons for her termination, the defendants provided documentary evidence including:

> 1) Seven (7) letters addressed to Dr. Lacour from defendant, Dr. Annie Kilcrease, which discussed disciplinary problems at the school, "out of control" students, complaints reported to Dr. Kilcrease from students and teachers regarding safety issues at the school, the failure of Dr. Lacour to perform her leadership responsibilities as principal, orders to discontinue the scheduling of school dances during hours scheduled for student tutoring, and the release of students from campus without following proper sign-out procedures. These letters were dated between the months of September 2006 through April 2007. Also, Dr. Kilcrease offered her personal assistance to Dr. Lacour in all of the letters, and also additional training and professional development opportunities to Dr. Lacour upon her request.
>
> 2) A hand-written letter from a student at the high school addressed to Dr. Kilcrease stating that the student was scared to return to the school because of the fighting and violence that was occurring on campus.
>
> 3) A police report regarding the arrest of two students for fighting off-campus after they were released from school early without proper authorization.
>
> 4) Letters from a teacher and the in-school suspension coordinator detailing complaints about Dr. Lacour's failure to properly discipline students.
>
> 5) The affidavit of Dr. Kilcrease that provided details of all of the incidents mentioned above and other incidents of fighting and lack of leadership at the school.

This evidence clearly documents legitimate, nondiscriminatory reasons for the plaintiff's termination. Therefore, the Court must now determine if the plaintiff has presented any evidence that would indicate that the defendants' nondiscriminatory reasons were

9

pretextual.[3]

After a thorough review of the evidence presented, the Court finds that as a matter of law no "actual proof of [gender] discrimination" exists nor does the evidence presented allow for an "inference of pretext." Baltazor v. Holmes, 162 F.3d 368, 373 (5th Cir. 1998). The plaintiff heavily relies upon the EEOC's determination that she met the requirements to bring a discrimination claim as evidence of actual discrimination. However, the EEOC's determination is not dispositive in a later gender discrimination suit. See Price v. Federal Exp. Corp., 283 F.3d 715, 725 (5th Cir. 2002)(stating that "EEOC's findings of racial discrimination are not dispositive in later racial discrimination suit); Cf. Smith v. Universal Services, Inc., 454 F.2d 154, 157 (5th Cir. 1972)(stating that "civil litigation at the district court level clearly takes on the character of a trial de novo, completely separate from the actions of the EEOC."). In fact, the only evidence the plaintiff presents as to gender discrimination are findings made by the EEOC that (1) a male

---

[3] In addition to the evidence discussed, the defendants also produced evidence that the plaintiff was paid a higher salary than any principal that preceded her. Dr. Lacour was also provided a home by the school district, which was remodeled to the plaintiff's specifications and no rent or utility fees were charged to her. Moreover, the defendants assert that nearly 80% of the Claiborne County School District employees, including Dr. Annie Kilcrease, are female. Although these facts are not pertinent to the gender discrimination analysis herein, the Court does find that they are relevant as to whether the defendants harbored any discriminatory intent towards the plaintiff.

preceded Dr. Lacour as principal of Port Gibson High School and a male was hired to replace her as principal; and, (2) she was not provided with an assistant principal but two assistant principals were hired for the 2007-2008 school year to assist her successor.

Although an element for consideration regarding her *prima facie* case, the fact that a male preceded Dr. Lacour and a male succeeded her is not evidence that the defendants' nondiscriminatory reasons for terminating Dr. Lacour were pretextual. Furthermore, the defendants presented evidence that Dr. Lacour had an administrative assistant who performed all responsibilities generally assigned to an assistant principal. Dr. Lacour argues that her termination could not be based on her failure to properly discipline students because that responsibility belonged to the administrative assistant. However, the evidence shows that Dr. Lacour was terminated, among other reasons, for disregarding the disciplinary recommendations made by the administrative assistant and, in some cases, reversing his decisions and issuing lesser penalties which inevitably created an unsafe environment at the school in the opinion of school officials.

Taken together, no discriminatory intent can be inferred from the reasons provided for Dr. Lacour's termination as principal of Port Gibson High School. Because the plaintiff has failed to provide evidence that would allow a rational factfinder to make a

reasonable inference that gender was a determinative reason for the defendants' employment decision, the Court finds the defendants' Motion for Summary Judgment as to the gender discrimination claim to be well-taken.

2. Tortious Interference With Business and/or Contractual Relations

A claim alleging tortious interference with business and/or contractual relations may "encompass interference with a prospective relationship as well as an existing one." <u>Hubbard Chevrolet Co. v. General Motors Corp.</u>, 682 F.Supp. 873, 877 (S.D. Miss. 1987); <u>Merlite Land, Sea & Sky, Inc. v. Palm Beach Inv. Properties, Inc.</u>, 426 F.2d 495, 498 (5th Cir. 1970). "Tortious interference with [a] contract occurs when one causes another to breach a contract with a third person" whereas "[t]ortious interference with business relations . . . occurs when one unlawfully diverts prospective customers away from another's business." <u>McBride Consulting Service, LLC v. Waste Management of Miss., Inc.</u>, 949 So.2d 52, 55 (Miss. App. 2006). In order to prove a claim for either tort, the plaintiff must prove that: (1) The acts were intentional; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual damage and loss resulted. <u>Biglane v. Under the Hill Corp.</u>, 949 So.2d 9, 16 (Miss. 2007). All

factors must be met or the claim fails.  Id.

In the case at bar, it is clear from the facts that the defendants have not interfered with prospective business and/or contractual relations of the plaintiff.  Although Dr. Lacour alleges in her Cross-Motion for Summary Judgment that her termination resulted in her inability to find suitable employment resulting in financial stress on her family, these allegations alone do not present facts sufficient to support a claim for tortious interference with business relations.  No prospective business relations were present at the time of the plaintiff's termination, and, furthermore, the defendants have presented sufficient reasons that provide justifiable cause for their actions.  The facts of this case, as previously discussed, show that Dr. Lacour was terminated for what her employer perceived to be inadequate performance of her responsibilities as principal of Port Gibson High School.  Accordingly, the Court finds that justifiable cause existed for the defendants' actions and the defendants' summary judgment motion is granted.

### B. Plaintiff's Cross Motion for Summary Judgment

Because the Court finds that the defendants' Motion for Summary Judgment is well-taken, the plaintiff's Cross-Motion for Summary Judgment is moot.  Nonetheless, in her motion Dr. Lacour asserts a new breach of contract claim against the defendants. Therefore, Court construes the plaintiff's Cross-Motion as a Motion

13

to Amend the Complaint to add a breach of contract claim. It is obvious to the Court that Dr. Lacour is under the impression that her tortious interference claim also includes a breach of contract claim. However, these are two separate and distinguishable claims, and the plaintiff did not plead a breach of contract claim in her Complaint or Amended Complaint. For these reasons, the Court orders the defendants to provide a response to the plaintiff's Motion to Amend the Complaint to add a breach of contract claim and also respond to the merits of that claim. The Court will hold in abeyance its ruling on this claim until both parties have had the opportunity to brief their respective positions.

As to the plaintiff's allegations that the defendants have violated Federal Rules of Civil Procedure 26, 34, and 37, the Court finds those allegations to be without merit. The record clearly shows that the defendants provided Dr. Lacour with responses to her request for production and interrogatories on August 17, 2009 and supplements to those responses on August 19, 2009. As a result, the defendants did not violate the federal rules or the Magistrate Judge's discovery order.

## IV. Conclusion and Order

As stated previously, the Court finds that the defendants' Motion for Summary Judgment is well-taken. As a result, the only matter now before the Court is the plaintiff's Motion to Amend the Complaint to add a breach of contract claim. The Court will hold

14

in abeyance its ruling on that claim until both parties have responded to the Motion to Amend.

Accordingly,

**IT IS HEREBY ORDERED** that the defendants' Combined Motion for Summary Judgment [**docket entry no. 49**] and Supplement [**docket entry no. 61**] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's Cross-Motion for Summary Judgment [**docket entry no. 57**] is **MOOT**.

**IT IS FURTHER ORDERED** that the defendants provide a response to the Court regarding not only the plaintiff's Motion to Amend the Complaint to add a breach of contract claim, but also to the merits of the breach of contract claim.

**SO ORDERED** this the 28th day of December 2009.

s/ David Bramlette

**UNITED STATES DISTRICT COURT**